UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN A. HIGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-00885-AGF |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff John A. Higgins was not disabled, and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The single issue before the Court is "whether the [Administrative Law Judge] erred in finding Plaintiff not disabled, in that the ALJ found Plaintiff able to perform other work that would require employers to provide Americans With Disabilities Act ('ADA') accommodation (a bariatric chair)."[2] ECF No. 12 at 2.

---

1  Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit.

2  According to Plaintiff, a "bariatric chair" is a chair designed to support an individual who weighs more than 300 pounds, whereas commercial-grade chairs "are tested for safety and durability using weights that do not exceed 300 pounds." ECF No.

1

Plaintiff asks the Court to reverse the Commissioner's decision and remand for an award of benefits. For the reasons stated below, the Court will affirm the Commissioner's decision.

## BACKGROUND

The Court adopts Plaintiff's recitation of the facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 12-1), with which Defendant represented she agrees. This Statement provides a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 22, 1973, protectively filed his application for disability insurance benefits on October 24, 2012, and his application for SSI on January 21, 2014. Plaintiff alleged that he became disabled on December 19, 2011, due to obesity, social anxiety, bipolar disorder, diabetes, high blood pressure, high cholesterol, back injury, and Meniere's disease. In forms associated with his application, Plaintiff listed his height as 5'10" and his weight as 410 lbs. On February 28, 2013, Plaintiff's application was denied at the initial administrative level, and on March 13, 2013, he requested a hearing before an ALJ.

A hearing before an ALJ was held on September 23, 2014, at which Plaintiff, represented by counsel, testified. On October 8, 2014 and February 1, 2015, a vocational expert ("VE") submitted answers to interrogatories posed by the ALJ. Tr. 249-58, 267-74. Specifically, the ALJ asked the VE by interrogatory to consider a hypothetical individual with Plaintiff's vocational factors and the residual functional capacity ("RFC")

---

12-1 at 2.

to perform light work as defined by the Commissioner's regulations except that he could only stand and/or walk for two hours during an eight-hour work day; he was limited to work not requiring the ability to carry out complex assignments on a consistent, sustained basis; he could not perform work involving more than occasional interaction with coworkers or the public; and, while seated, he required a bariatric chair sufficient to withstand six hours per day of his 425-pound weight. At the request of Plaintiff's counsel, the ALJ next asked the VE by interrogatory whether the need for a bariatric chair represents an "accommodation," defined as "the acquisition of new equipment not normally found in the workplace, or the modification of equipment or devices normally found in the workplace, or more generally the modification or adjustment of a work environment to enable the individual to function in the job," and with a citation to the definitions section of the ADA. Tr. 262, 270.

The VE responded to these interrogatories on February 1, 2015 and stated that a hypothetical individual with Plaintiff's vocational factors and the RFC described above, including the bariatric chair requirement, could perform jobs that existed in significant numbers locally and nationally, namely, the jobs of table worker, document preparer, and final assembler. Tr. 269, 274. In response to the second interrogatory, regarding the bariatric chair, the VE stated: "This would be an accommodation wherein the employer would need to acquire the bariatric chair. In my experience this is a common accommodation for an employer to make for an employee." Tr. 274.

By decision dated March 27, 2015, the ALJ determined that Plaintiff had the RFC

described above.  With regard to the bariatric chair, the ALJ found Plaintiff's need for such a chair to be "somewhat dubious" because "the record shows a longitudinal history of extreme obesity dating back to before [Plaintiff's] alleged onset date, without any significant change in weight since that time, yet [Plaintiff's] primary care provider did not prescribe the bariatric chair until almost three months after the hearing [on Plaintiff's application for benefits]."  Tr. 13.  Nevertheless, the ALJ "for [Plaintiff's] benefit," *id.*, included such a limitation to Plaintiff's RFC.  The ALJ then relied on the VE's interrogatory responses to find that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  Tr. 19, 25.   Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on May 10, 2016.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).  The court "may not reverse . . . merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might

accept as adequate to support a conclusion." *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments.  If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's

regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.

If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform other work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**<u>Consideration of an Accommodation at Step Five</u>**

As noted above, Plaintiff argues that the ALJ erred in finding that Plaintiff was able to perform other work because he could only perform that work with an ADA accommodation in the form of a bariatric chair.

"[T]he ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." *Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996). In *Eback*, the primary case relied upon by Plaintiff, although it was undisputed that the claimant required daily use of a nebulizer four times a day for asthma, the ALJ found that the claimant was not disabled because she could perform sedentary to light work in places where environmental irritants were not present. In arriving at this conclusion, the ALJ relied on the testimony of a VE, who when testifying about a

hypothetical worker "assumed that an employer would allow the necessary nebulizer use on the job" because the he believed that the nebulizer "would be a reasonable accommodation that an employer could or should make, particularly considering the ADA." *Id.* The VE explicitly testified that his opinion as to the claimant's employability would change if an employer were not willing to make this accommodation. *Id.*

The Eighth Circuit found this rationale "faulty for numerous reasons, the most significant of which [was] that a determination of relevant jobs existing in the national economy in significant numbers [was] based on an assumption that the employer would be willing to make accommodations under the ADA." *Id.* As the Eighth Circuit put it:

> The inquiry into other available jobs [under the Social Security Act] is based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors). Whether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant because our assessment must be based on broad vocational patterns rather than on any individual employer's practices. To support a finding that an individual can perform "other work," the evidence would have to show that a job, which is within the individual's capacity because of employer modifications, is representative of a significant number of other such jobs in the national economy.

*Id.* (internal alterations and citation omitted). Further noting that the jobs cited by the ALJ in that case were shift jobs, and that the VE in that case "never testified that the cited jobs routinely offer employees breaks . . . as would be necessary for [the claimant's] condition," the appellate court found the ALJ's decision was not supported by substantial evidence and remanded for an award of benefits. *Id.* at 412–13.

Applying the Eighth Circuit's reasoning, the Fifth Circuit in *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir. 1999), agreed that "a vocational expert should not base his determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability." However, the appellate court distinguished between vocational inquiries focused on whether a specific employer might accommodate an impaired worker (improper), and those focused on whether positions with necessary accommodations are sufficiently available in the national economy (proper). The focus in *Jones* was the latter. *Id.*

The VE in *Jones* "explained, prior to mentioning the ADA, that a significant number of jobs that existed that would permit [the claimant] to work" notwithstanding his need to alternate between sitting and standing. *Id.* The VE only mentioned the ADA in response to further questioning specifically regarding assembler jobs, stating that workers in such jobs have the "option, you know, just sitting and standing at will" and indicating that in light of the ADA, "most employers today, will accommodate workers along that line." *Id.* at 694 n.1.

The court held that the ALJ's reliance on such testimony was proper because "the expert's reference to the ADA suggests not that he assumed that assembler jobs required accommodation, but that allowing for an employee to alter between sitting and standing is a prevalent accommodation in the workplace." *Id.* at 694 (citing caselaw for the proposition that an assessment of jobs available to a claimant must be based on broad vocational patterns); *see also Cantrell v. Colvin*, No. 2:12-CV-01504-GMN, 2013 WL

5947808, at *8–9 (D. Nev. Nov. 5, 2013) (affirming an ALJ's denial of benefits where the ALJ relied on testimony from a VE that, based on her experience, someone with the claimant's limitations, including the need for a sit/stand option, could perform the claimant's past work, and that the sit/stand option could be accomplished with an adjustable desk).

This case is more like *Jones* than *Eback*. Upon review of the VE's interrogatory responses and the ALJ's decision, the Court concludes that the vocational assessment in this case was based on broad vocational patterns rather than on any specific employer's practices. As in *Jones,* the VE properly focused on whether positions with the necessary accommodations were sufficiently available in the national economy, and stated that, based on her experience and expertise, they were and that the availability of a bariatric chair is a prevalent accommodation in the workplace. The ALJ did not err in relying on this statement.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 9th day of June, 2017.